**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| | * | |
| **v.** | * | **Crim. No. 1:02-cr-00201-JRR-1** |
| | * | |
| **JAMES ELMER GROSS, SR.** | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION**

Pending before the court is Defendant James Elmer Gross Sr.'s Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) (ECF No. 494; "the Motion"). The court has reviewed all papers.[1] No hearing is necessary. Local Rule 105.6 (D. Md. 2023). For the reasons that follow, by accompanying order, the Motion will be denied.

I.    **BACKGROUND**

Defendant is a federal prisoner who is serving a 600-month sentence for his role in a multi-member racketeering and drug distribution conspiracy. (Gov't Opp., ECF No. 499 at 1-2.) Defendant is 65 years-old, housed at FCI Edgefield, and has served approximately 275 months of his sentence. His projected release date is October 27, 2043. *Id.* at 4.

On September 11, 2002, Defendant was charged in nine counts of a 19-count multi-co-defendant Superseding Indictment. (Def.'s Mot., ECF No. 494 at 2.) On February 24, 2003, a jury convicted Defendant on the following eight counts (ECF No. 499 at 2): Racketeering, in violation of 18 U.S.C. § 1962(c) (Count One); Conspiracy to Commit Racketeering, in violation of 18 U.S.C. § 1962(d) (Count Two); Conspiracy to Distribute Heroin, in violation of 21 U.S.C. § 846 (Count Three); Arson, in violation of 18 U.S.C. § 844(i) (Count Nine); Use of a Fire to Commit

---

[1] In addition to the Government's opposition and Defendant's reply (respectively, ECF Nos. 499 and 500), Defendant and the Government filed various supplemental papers. (ECF Nos. 501, 504, 508, 530, and 541.)

a Felony, in violation of 18 U.S.C. § 844(h)(1) (Count Ten); Witness Tampering, in violation of 18 U.S.C. §1512(b)(1) (Count Eleven); Mail Fraud, in violation of 18 U.S.C. § 1341 (Count Twelve); and Witness Tampering, in violation of 18, U.S.C. §1512(b)(l) (Count Fourteen). (Verdict Sheet; ECF No. 193.)

Defendant's sentence on counts one and two were calculated by using "the offense level applicable to the underlying racketeering activity." (Def.'s Mot., Exhibit 1, Presentence Investigation Report ("PSR"), ECF No. 494-1 ¶ 67.) Count three, the drug distribution charge, produced the highest base offense level of 40. *Id.* ¶¶ 68, 73. The offense level was calculated by starting at the base offense level of 34 pursuant to U.S.S.G. § 2D1.1(c)(3) based on the finding that Defendant's criminal activity "involved at least 3 kilograms, but less than 10 kilograms of heroin." *Id.* ¶ 68. Two points were added pursuant to U.S.S.G. § 2D1.1(b)(1) because a dangerous weapon was possessed, and an additional four points were added pursuant to U.S.S.G. § 3B1.1(a) because Defendant was found to be a leader. *Id.* ¶¶ 69, 71. In total, Defendant's adjusted guidelines level for counts one and two was 40. *Id.* ¶¶ 73, 97. Count ten carried a mandatory consecutive sentence of 10 years pursuant to 18 U.S.C. § 844(h)(1). *Id.* ¶ 105.

Defendant's prior criminal convictions resulted in a criminal history score of nine. (PSR, ECF No. 494-1 ¶ 115.) Pursuant to U.S.S.G. § 4A1.1(d), two points were added because Defendant was on supervised release at the time of the instant offense. *Id.* ¶ 116. Pursuant to U.S.S.G. § 4A1.1(e), one point was added because the instant offense was committed less than two years following Defendant's release from custody. *Id.* ¶ 117. Accordingly, Defendant's criminal history resulted in twelve criminal history points, rendering Defendant's criminal history category V; Defendant, however, had two prior felony convictions involving drug distribution. As a result, Defendant was rendered a career offender, rendering his criminal history category VI. *Id.*

¶¶ 118-19; U.S.S.G. § 4B1.1(a).  At a level 40, criminal history category VI, Defendant had a guidelines calculation of 360 months to life imprisonment.  *Id.* ¶ 131.

On July 17, 2003, the Honorable J. Frederick Motz imposed a sentence of 600 months, consisting of 480 months as to counts one, two and three; 240 months as to count nine; 120 months as to count eleven; 60 months as to count twelve; and 120 months as to count fourteen – all to run concurrently.  (ECF No. 499 at 3) (citing Amended Judgment and Commitment Order, ECF No. 289 at 2)).  Judge Motz further imposed 120 months as to count ten, which ran consecutive to all other counts.  *Id.*

On August 5, 2003, Defendant filed an appeal of the district court's final judgment.  (ECF No. 499 at 3.)  On June 28, 2006, the Fourth Circuit vacated Defendant's sentence and remanded the case to the district court for resentencing on the basis that Defendant's sentence violates the Sixth Amendment under *United States v. Booker*, 543 U.S. 220 (2005).[2]  *U.S. v. Gross*, 199 Fed. Appx. 219, 242 (4th Cir. 2006).  Specifically, the Fourth Circuit held:

> Gross Sr.'s sentence violates the Sixth Amendment under *Booker* for the same reasons detailed with respect to Gross Jr. . . .  Gross Sr.'s offense level of 40 combined with a criminal history score of VI provided the basis for his 480 month sentence on counts 1, 2, and

---

[2] As the Fourth Circuit explained:

> In *Booker*, the Supreme Court held that an application of the Sentencing Guidelines in which the district court enhanced the defendant's sentence based on facts it found during the sentencing proceeding violated the Sixth Amendment. *Id.* at 244, 125 S.Ct. 738. In the wake of the decision we have come to recognize two types of *Booker* error: constitutional and statutory. *Rodriguez*, 433 F.3d 411, 414 (4th Cir. 2006). Constitutional *Booker* error arises where a district court enhances a defendant's sentence "beyond the maximum authorized by facts found by a jury beyond a reasonable doubt or admitted by the defendant." *Id.* Statutory *Booker* error arises where a district court treats the Guidelines as mandatory rather than advisory. *Id.* Here the appellants assert that their sentences are infected with constitutional *Booker* error, while the government asserts that only statutory *Booker* error exists. Therefore, we must consider whether the appellants' sentences must be vacated and remanded under either standard.

*U.S. v. Gross*, 199 Fed. Appx. 219, 240 (4th Cir. 2006).

3.

> Gross Sr.'s sentence on these counts violates the Sixth Amendment because the quantity of drugs that provided the basis for his longest term of imprisonment was neither found by the jury nor admitted by Gross Sr. Therefore, we must vacate Gross Sr.'s sentence and remand to the district court for resentencing. Because we find constitutional *Booker* error present, we need not address the issue of statutory *Booker* error.

199 Fed. Appx. at 242.

On remand, the district court concluded that Defendant's 600-month sentence was appropriate. (ECF No. 494 at 7.) With regard to the drug amount that resulted in a two-level increase, Judge Motz explained:

> THE COURT: Well, let me state what my sentence is and state briefly the reasons for it. Essentially, I will sentence you to exactly the same sentence that I sentenced you to before. In imposing this sentence, I recognize that the guidelines are advisory and findings I'm making are in my capacity of taking the first step of explaining my sentence in the context of the advisory guidelines.

> I have absolutely no doubt that the role enhancement was correct and that the firearms enhancement was correct. When I say absolutely no doubt, I find those enhancements, to the extent it's legally relevant, recognizing that the guidelines are only advisory, beyond a reasonable doubt.

> I cannot in good conscience today say that I would find beyond a reasonable doubt the drug amounts. I do find those by a preponderance of the evidence. I think my findings are supported by that. Frankly, if that is an issue, it is an issue that I would, I would have to re-study all of this a lot more than I have in preparation for the sentencing.

> I'm absolutely content to find the drug amount which resulted in, I think, a two level increase, as I understand it, by a preponderance of the evidence. I cannot say right now that if the standard I am to apply in making a calculation under the advisory guidelines is beyond a reasonable doubt, that I would find that beyond a reasonable doubt. But I do find it beyond a preponderance of the evidence.

4

> In any event, I recognize that all of these, whatever findings I make, both in terms of the facts underlying the guidelines and the guideline factors themselves, are simply the first step and that I, finally my sentence has to be imposed in the context of taking into account the factors of 18 USC Section 3553.
>
> Here, I have no hesitancy in finding that the sentence I imposed is absolutely appropriate under the statute. The nature and the circumstance of the offense speak for themselves, as do the history and characteristics of Mr. Gross.

(Def.'s Mot., Resentencing Tr., Exhibit 3, ECF No. 494-3 at 18:20-20:4.)

On September 22, 2006, Defendant appealed the amended judgment.  (ECF No. 292.)  On November 6, 2007, the Fourth Circuit affirmed the judgment of the district court, finding that the sentence was procedurally and substantively reasonable.  (ECF No. 324.)  *U.S. v. Gross*, 253 Fed. Appx. 264 (4th Cir. 2007).  Subsequently, Defendant filed a motion under 28 U.S.C. § 2255, which was denied on August 28, 2008.  (ECF Nos. 363 and 364.)  On November 20, 2018, Defendant filed a Motion to Reduce Sentence pursuant to 18 U.S.C. § 3582(c)(2) and U.S.S.G. Amendment 782.  (ECF No. 464.)  On February 14, 2019, the Honorable Judge Catherine Blake denied Defendant's Motion to Reduce because Amendment 782 did not change his guideline range.  (ECF No. 467.)

On August 4, 2021, Defendant, through counsel, filed the instant Motion pursuant to 18 U.S.C. § 3582(c)(1)(A)(i).  (ECF No. 494.)  Defendant argues that this court should grant the Motion based on the extraordinary and compelling reasons presented by his vulnerability to COVID-19, as well as an unwarranted disparity in his sentence.  *Id.* at 1.

## II.  <u>LEGAL STANDARD</u>

Ordinarily, "[t]he court may not modify a term of imprisonment once it has been imposed.'" 18 U.S.C. § 3582(c).  "However, Congress created an exception to that general rule

when 'extraordinary and compelling reasons warrant such a reduction.'" *United States v. Brown*, 78 F.4th 122, 128 (4th Cir. 2023) (quoting 18 U.S.C. § 3582(c)(1)(A)(i)). "For many years, district courts could reduce a term of imprisonment on that ground only 'upon motion of the Director of the Bureau of Prisons.'" *United States v. High*, 997 F.3d 181, 185 (4th Cir. 2021) (quoting 18 U.S.C. § 3582(c)(1)(A) (2002)). "But in 2018, Congress passed the First Step Act, which 'permits incarcerated defendants to file motions for compassionate release directly with the district court, provided they have fully exhausted their administrative remedies.'" *Brown*, 78 F.4th at 128 (quoting *United States v. Malone*, 57 F.4th 167, 173 (4th Cir. 2023)).

Section 3582(c)(1)(A), as amended by the First Step Act, provides in relevant part:

> (c) Modification of an imposed term of imprisonment. — The court may not modify a term of imprisonment once it has been imposed except that —
>> (1) in any case.—
>>> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>>>> (i) extraordinary and compelling reasons warrant such a reduction;
>>>> . . .
>>>> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A). Accordingly, "[i]n analyzing a motion for compassionate release,

district courts must determine: (1) whether extraordinary and compelling reasons warrant such a reduction; and (2) that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Malone*, 57 F.4th at 173 (citing 18 U.S.C. § 3582).  "Only after this analysis may the district court grant the motion if (3) the relevant 18 U.S.C. § 3553(a) factors, to the extent they are applicable, favor release."  *Id.*

Even if the court concludes that such extraordinary and compelling circumstances exist, the court must consider the sentencing factors set forth in 18 U.S.C. § 3553(a).  Those factors include: "(1) the nature of the offense and the defendant's characteristics; (2) the need for the sentence to reflect the seriousness of the offense, promote respect for the law, and provide just punishment; (3) the kinds of sentences available and the applicable Guidelines range; (4) any pertinent Commission policy statements; (5) the need to avoid unwarranted sentence disparities; and (6) the need to provide restitution to victims."  *United States v. Johnson*, No. CR ELH-99-352, 2023 WL 7130950, at *21 (D. Md. Oct. 27, 2023).

"A district court need not provide an exhaustive explanation analyzing every § 3553(a) factor."  *United States v. Jenkins*, 22 F.4th 162, 170 (4th Cir. 2021).  "Further, a district court is not required to address each of a defendant's arguments when it considers a motion for compassionate release under § 3582(c)(1)."  *Id.*  In *Jenkins*, the Fourth Circuit explained:

> Although a district court is not required to address each of a defendant's arguments for a reduced sentence, just how much of an explanation is required depends upon the narrow circumstances of the particular case. *Chavez-Meza*, 138 S. Ct. at 1965 (affirming the district court's "barebones form order" denying defendant's request for a sentence modification under § 3582(c)(2)); *see also High*, 997 F.3d at 191 (applying *Chavez-Meza* to affirm the district court's denial of a § 3582(c)(1)(A) motion for compassionate release).

> In *Chavez-Meza*, the Supreme Court held:

> In some cases, it may be sufficient for purposes of appellate review that the judge simply relied upon the record, while making clear that he or she has considered the parties' arguments and taken account of the § 3553(a) factors, among others. But in other cases, more explanation may be necessary (depending, perhaps, upon the legal arguments raised at sentencing).

> *Chavez-Meza*, 138 S. Ct. at 1965.

> In other words, there is no "categorical requirement" that a court acknowledge and address each of the defendant's arguments on the record. *Id.* at 1965. Instead, the relevant standard is whether the district court "set forth enough to satisfy [this] court that [it] has considered the parties' arguments and has a reasoned basis for exercising [its] own legal decisionmaking authority, so as to allow for meaningful appellate review." *High*, 997 F.3d at 190 (quoting *Chavez-Meza*, 138 S. Ct. at 1965).

22 F.4th at 170-71.

## III.   **DISCUSSION**

### A.   **Exhaustion of Administrative Remedies**

Section 603(b) of the First Step Act amended 18 U.S.C. § 3582(c)(1)(A) to permit a defendant to file a motion for compassionate release after he has "fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on [his] behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

The Government does not dispute, and the court is satisfied, that Defendant properly exhausted his administrative remedies because Defendant previously filed an administrative request for compassionate release with the Warden of FCI Edgefield, which the Warden denied on June 14, 2021.  (ECF No. 499 at 17; Gov't Opp., Exhibits 2 and 3, ECF Nos. 499-2 and 499-3.)

B.     <u>**Extraordinary and Compelling Reasons**</u>

In general, "the district court enjoys broad discretion in conducting § 3582(c)(1)(A) analysis." *United States v. Jenkins*, 22 F.4th 162, 169 (4th Cir. 2021).  However, in *United States v. Taylor*, the Fourth Circuit noted that "[w]hen deciding whether to reduce a defendant's sentence under § 3582(c)(1)(A), a district court may grant a reduction only if it is 'consistent with applicable policy statements issued by the Sentencing Commission.'"  820 Fed. Appx. 229, 230 (4th Cir. 2020) (citing 18 U.S.C. § 3582(c)(1)(A)).  Relevant here, the Policy Statement codified at U.S.S.G. § 1B1.13 is titled "Reduction in Term of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A)" ("Policy Statement").  Importantly, as discussed below, amendments to the Policy Statement took effect on November 1, 2023.

Prior to the amendments, the Policy Statement began: "Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment . . . ."  U.S.S.G. § 1B1.13 (2021).  In analyzing this language, the Fourth Circuit in *United States v. McCoy* stated: "[w]hen a defendant exercises his new right to move for compassionate release on his own behalf . . . § 1B1.13 does not apply[.]"  981 F.3d 271, 281 (4th Cir. 2020).  As a result, in 2020, the Fourth Circuit concluded: "[t]here is as of now no 'applicable' policy statement governing compassionate-release motions filed by defendants under the recently amended § 3582(c)(1)(A), and as a result, district courts are 'empowered . . . to consider any extraordinary and compelling reason for release that a defendant might raise.'"  *Id.* (quoting *United States v. Brooker*, 976 F.3d 228, 230 (2d Cir. 2020)).

Importantly, the Fourth Circuit's holding in *McCoy* was based on a version of the Policy Statement that has since been amended, effective November 1, 2023.  As amended, the Policy Statement provides: "Upon motion of the Director of the Bureau of Prisons or the defendant

pursuant to 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment . . . ." U.S.S.G. § 1B1.13 (2023). "Therefore, it appears that the Fourth Circuit's conclusion in *McCoy*, 981 F.3d at 281, to the effect that '§ 1B1.13 is not an applicable policy statement,' is no longer consistent with the Guidelines, as amended." *United States v. Stanley Richardson*, No. CR ELH-17-0390, 2023 WL 8478910, at *5 (D. Md. Dec. 7, 2023). "This is because the Policy Statement is now expressly applicable to defendant-filed motions pursuant to 18 U.S.C. § 3582(c)(1)(A)." *Id.*

The court is mindful that in the instant case Defendant filed the Motion on August 4, 2021 – well before the November 1, 2023, amendment went into effect. That notwithstanding, whether the court applies § 1B1.13 or considers any extraordinary and compelling reason that Defendant might raise, the court comes to the same conclusion. *See United States v. Curtin,* No. CR TDC-14-0467, 2023 WL 8258025, at *2 (D. Md. Nov. 29, 2023) (considering "the full range of extraordinary and compelling reasons available under *McCoy* without regard to limiting considerations set forth in the new policy statement" because the amendment "arguably narrows the range of potential extraordinary and compelling reasons from those previously in effect") (citing U.S.S.G. § 1B1.11[3] (barring use of the Guidelines manual in effect on the date of sentencing if doing so would violate the *ex post facto* clause) and *McCoy*, 981 F.3d 271, 283 (4th Cir. 2020) (holding that courts are not limited to extraordinary and compelling reasons referenced in the

---

[3] U.S.S.G. § 1B1.11 provides in part:

> (a) The court shall use the Guidelines Manual in effect on the date that the defendant is sentenced.
> (b)(1) If the court determines that use of the Guidelines Manual in effect on the date that the defendant is sentenced would violate the ex post facto clause of the United States Constitution, the court shall use the Guidelines Manual in effect on the date that the offense of conviction was committed.

policy statement of the version of U.S.S.G. § 1B1.13 pre-dating the November 2023 amendments because it related to requests for compassionate release made to the BOP, not to the courts)); *but see Richardson*, 2023 WL 8478910, at *5 n.3 (noting that, while the defendant's motion was filed on December 22, 2022, before the amendments took effect, "the [c]ourt applies the law in effect at the time of its decision, not the law in effect at the time the [m]otion was filed") (citing *Maryland Shall Issue, Inc. v. Governor Wes Moore*, 86 F.4th 1038 (4th Cir. 2023) (ruling in accordance with law in effect at the time of the appellate decision, not the law in effect at the time of the district court's decision)).

### 1.    COVID-19

Defendant argues that the circumstances of the COVID-19 pandemic present extraordinary and compelling reasons for a sentence reduction.  (Def.'s Mot., ECF No. 494 at 8.)  Specifically, Defendant maintains that his medical conditions—hypertension and hyperlipidemia—make him especially vulnerable to COVID-19.  *Id.* at 10.  In its Opposition, the Government argues that Defendant's medical conditions do not constitute an extraordinary and compelling reason for release because the medical conditions are well-treated and stable within the facility of confinement, and the medical records do not indicate that Defendant is suffering significant complications resulting from his medical conditions.  (Gov't Opp., ECF No. 499 at 19.)  The Government further notes that Defendant was diagnosed with hypertension and hyperlipidemia in December 2008 and November 2018.[4]  *Id.* at 18.

COVID-19 led to "a public health crisis more severe than any seen for a hundred years." *Antietam Battlefield KOA v. Hogan*, 461 F. Supp. 3d 214, 223 (D. Md. 2020), *aff'd in part,*

---

[4] The Government's Opposition states "November 2008," however, this appears to be a typo.  *See* ECF No. 530-1 at 24.

*dismissed in part*, 2022 WL 1449180 (4th Cir. May 9, 2022) (per curiam).  And "[t]he judges of this [c]ourt 'have written extensively about the pandemic'" and "it is not necessary to recount in detail the unprecedented nature and impact of the pandemic." *Richardson*, 2023 WL 8478910, at *8 (quoting *United States v. Williams*, PWG-19-134, 2020 WL 3073320, at *1 (D. Md. June 10, 2020)).  "People infected with the coronavirus sometimes experience only mild or moderate symptoms." *Id.*  "But, particularly at the outset of the pandemic, the virus could cause severe medical problems as well as death, especially for those in 'high-risk categories . . . .'" *Id.* (quoting *Antietam Battlefield KOA*, 461 F. Supp. 3d at 223 (citation omitted)).

Of relevance here, "[t]he Centers for Disease Control and Prevention ('CDC') has identified certain risk factors that may increase the chance of severe illness due to the coronavirus, and the CDC has repeatedly revised its guidance as to medical conditions that pose a greater risk of severe illness due to COVID-19." *Richardson*, 2023 WL 8478910, at *8.  Specifically, the CDC has identified that "[h]aving certain heart conditions, such as heart failure, coronary artery disease, cardiomyopathies, and possibly high blood pressure (hypertension) can make" an individual more likely to get very sick from COVID-19.  *People with Center Medical Conditions*, CTRS. FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated May 11, 2023).

In the instant case, "the threshold questions are whether [the defendant] has a particularized risk of contracting COVID-19 in prison and whether his medical conditions render him particularly susceptible to severe illness or death should he contract the virus." *United States v. Youngblood*, 858 Fed. Appx. 96, 98 (4th Cir. 2021); *see United States v. High*, 997 F.3d 181, 185 (4th Cir. 2021) (explaining that arguments for compassionate release "based on the coronavirus pandemic depend at least on allegations that the risk of contracting COVID-19 in a prison is higher than the risk

outside the prison and that the inmate's preexisting medical condition increases that individual's risk of experiencing a serious, or even fatal, case of COVID-19").

However, "mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering the Bureau of Prison's statutory role, and extensive professional efforts to curtail the virus' spread." *United States v. Raia*, 954 F.3d 594, 597 (3rd Cir. 2020). Further, as this court explained more recently in *United States v. Cohen*, "at this stage of COVID-19, the widespread availability of vaccines tips the balance against finding [the defendant's] risk sufficient to warrant extraordinary and compelling reasons." No. CR GLR-14-00310, 2023 WL 8188386, at *2 (D. Md. Nov. 27, 2023); *see United States v. Langford*, No. CR JKB-15-0539, 2022 WL 1443868, at *2 (D. Md. May 6, 2022) (concluding the defendant's potential cancer, hypertension, and obesity was not sufficient); *United States v. Sanders*, No. SAG-06-087, 2021 WL 1428546, at *3 (D. Md. Apr. 15, 2021) ("This Court agrees with the vast majority of other courts who have ruled, on the basis of present understanding, that the highly effective available vaccines dramatically affect whether an inmate's medical conditions constitute the 'extraordinary and compelling reason' required to further consider compassionate release."); *United States v. Collins*, No. 7:17-CR-00033-01, 2021 WL 4991588, at *3 (W.D. Va. Oct. 27, 2021), *aff'd*, No. 21-7650, 2022 WL 3359170 (4th Cir. Aug. 15, 2022) ("For the vast majority of prisoners, the availability of a vaccine makes it impossible to conclude that the risk of COVID-19 is an 'extraordinary and compelling' reason for immediate release.").

While the court recognizes that Defendant has concerns about contracting COVID-19 in prison, he fails to demonstrate that he has any particularized risk of contract the virus while housed in FCI Edgefield. As of December 12, 2023, one inmate and no staff members were COVID

13

positive at Edgefield.   *See Inmate COVID-19 Data*, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/coronavirus/covid19_statistics.html (last updated December 12, 2023). Thus, it appears that the COVID-19 measures taken by the Bureau of Prisons are working.  *United States v. Collins*, No. 7:17-CR-00033-01, 2021 WL 4991588, at *3 (W.D. Va. Oct. 27, 2021), *aff'd*, No. 21-7650, 2022 WL 3359170 (4th Cir. Aug. 15, 2022) (concluding that the measures taken by the Bureau of Prisons are working where there is one inmate and two staff members positive for COVID-19).

Importantly, Defendant refuses to receive a COVID-19 vaccine.  (Def.'s Suppl., ECF No. 530-1 at 17.)  As explained in *Langford*, the widespread availability of vaccines makes it difficult for this court "to conclude that the risk of COVID-19 is an extraordinary and compelling reason for immediate release."  *See Langford, supra.*; *United States v. Lovelace*, No. CR ELH-18-623, 2021 WL 4820533 (D. Md. Oct. 14, 2021) (explaining that "[c]ourts have also found that a prisoner's refusal to obtain a COVID-19 vaccine significantly undermines the claim of susceptibility to the effects of COVID-19 as a ground for compassionate release"); *Collins*, 2021 WL 4991588, at *3 (noting that "[m]any courts have found that an inmate who declines a vaccine, that has been determined to be highly effective, and for whom the vaccine is not medically contraindicated, generally cannot establish an extraordinary and compelling for compassionate release and/or that such refusal is contrary to an assertion that one is at risk"); *United States v. Baeza-Vargas*, No. CR-10-00448-010-PHX-JAT, 2021 WL 1250349, at *2–3 (D. Ariz. Apr. 5, 2021) ("Judges of this Court, as well as others around the country, have ruled with consistency that an inmate's denial of a COVID-19 vaccination weighs against a finding of extraordinary and compelling circumstances.").

The court is mindful that Defendant has a medical condition – hypertension – that the CDC

lists as an aggravating medical condition that may increase his risk of severe illness.  (Def.'s Mot,

Clinical Encounter, Exhibit 4, ECF No. 494-4 at 88.)   However, as the Government notes,

Defendant was diagnosed with hypertension in December 2008 and there is nothing before the

court to suggest that Defendant's hypertension is untreated or unmanaged.  *Id.*  Instead, the medical

records before the court indicate that Defendant has been actively treated.  The medical records

indicate that, in May 2020, Defendant denied having chest pain and reported compliance with his

medication.  *Id.* at 12.  On May 12, 2020, an x-ray showed no acute cardiopulmonary disease,

Defendant's lungs were clear, and his heart size normal.  *Id.* at 51.  Further, as of January 13, 2023,

while Defendant reported he was in pain, the medical records indicate that Defendant presented

well, alert, and oriented, and his cardiovascular exam was within normal limits.  (Def.'s Supp.,

Jan. 2023 Clinical Encounter, Exhibit 1, ECF No. 530-1 at 2.)  Defendant's medical records further

indicate that he has no history of COVID-19 infection.  *Id.* at 12.

Accordingly, for all of these reasons, the circumstances of the COVID-19 pandemic and

Defendant's medical conditions do not present extraordinary and compelling reasons for a

sentence reduction.[5]

---

[5] The court notes that it would come to the same conclusion were it to apply the amended Policy Statement.  The Policy Statement provides four circumstances in which a defendant's medical circumstances may constitute an extraordinary and compelling circumstance:

> **(A)** The defendant is suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end-of-life trajectory). A specific prognosis of life expectancy (*i.e.*, a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>
> **(B)** The defendant is--
> > **(i)** suffering from a serious physical or medical condition,
> > **(ii)** suffering from a serious functional or cognitive impairment, or
> > **(iii)** experiencing deteriorating physical or mental health because of the aging process,
> > that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he

### 2.      *Sentencing Disparities*

Relying on the Fourth Circuit's decision in *United States v. McCoy*, Defendant requests

that the court modify his sentence because: (1) the disparity between his sentence and the sentence

he would face were he sentenced today constitutes an extraordinary and compelling circumstance;

and (2) Defendant's sentence is double that of any other co-defendant in his case, and is over

double the national average for murder at the federal level.  (Def.'s Mot., ECF No. 494 at 9, 15;

citing *United States v. McCoy*, 981 F.3d 271 (4th Cir. 2020)).   More specifically, Defendant

maintains that the sentencing guidelines overstate his criminal culpability for various reasons: (1)

developments in the controlling case law would compel the conclusion that he would not qualify

as a career offender for all counts except the arson charge; (2) inclusion of the heroin distribution

charge, which occurred during the course of the conspiracy, overstates Defendant's criminal

---

or she is not expected to recover.

> **(C)** The defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death.

> **(D)** The defendant presents the following circumstances--
> > **(i)** the defendant is housed at a correctional facility affected or at imminent risk of being affected by (I) an ongoing outbreak of infectious disease, or (II) an ongoing public health emergency declared by the appropriate federal, state, or local authority;
> > **(ii)** due to personal health risk factors and custodial status, the defendant is at increased risk of suffering severe medical complications or death as a result of exposure to the ongoing outbreak of infectious disease or the ongoing public health emergency described in clause (i); and
> > **(iii)** such risk cannot be adequately mitigated in a timely manner.

U.S.S.G. § 1B1.13(b)(1)(A)-(D).

Defendant does not assert, nor is there any evidence to suggest, that Defendant is suffering from a terminal illness, that his ability to care for himself is substantially diminished by a serious physical or medical condition, or that he is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which he is at risk of serious deterioration in health or death.  *See* U.S.S.G. § 1B1.13(b)(1)(A)-(C). Additionally, as discussed, the court is not persuaded that Defendant is entitled to relief under U.S.S.G. § 1B1.13(b)(1)(D), which provides that, in certain circumstances, due to personal health risk factors and custodial status, the defendant is at increased risk of suffering severe medical complications as a result of exposure to the ongoing outbreak of infectious disease.  *See* Section III.B.1., *supra.*

culpability and results in a double punishment for the drug distribution charges; and (3) the Fourth Circuit remanded Defendant's case after appeal finding that the guidelines were calculated based on a drug amount neither found by the jury nor admitted by Defendant.[6] *Id.* at 15.

In response, the Government argues that the court should not allow Defendant "to use compassionate release as a mechanism to endlessly re-argue sentencing issues that were already raised and ruled upon at the original sentencing proceeding." (Gov't Opp., ECF No. 499 at 29.) The Government further asserts that were Defendant convicted of the same offense today, and sentenced without the career offender enhancement, he would still be subject, at minimum, to the

---

[6] Specifically, Defendant argues:

> Mr. Gross's "instant offense of conviction" for Count Three, Conspiracy to Distribute and Possess with Intent to Distribute Heroin, is not considered a controlled substance offense as that term is employed by the U.S.S.G. See U.S.S.G. § 4B1.1(a)(2) and § 4B1.2(b); *United States v. Norman*, 935 F.3d 232 (4th Cir. 2019). In *Norman*, the Court of Appeals for the Fourth Circuit explicitly ruled that because 21 U.S.C. § 846 criminalizes conspiratorial conduct which is broader than the conduct criminalized by the "generic, contemporary meaning" or conspiracy, the activity criminalized in 21 U.S.C. § 846 does not qualify for the sentencing enhancements described in U.S.S.G. § 4B1.1. *Norman*, 935 F.3d at 237-39. The Court explained that a conviction pursuant to 21 U.S.C. § 846 – based on conspiratorial conduct – does not constitute a predicate offense for determining whether a defender is a career offender pursuant to U.S.S.G. § 4B1.1. Id.
>
> It is important that Mr. Gross is no longer a career offender on this count, because this was the Count for which there was the highest offense level. The guidelines assumed the government's version of the facts that the criminal activity involved at least 3 kilograms, but less than 10 kilograms of heroin, which gave a base offense level of 34 pursuant to U.S.S.G. § 2D1.1(c)(3). Two points were added pursuant to U.S.S.G. § 2D1.1(b)(1) because a dangerous weapon was possessed, and four points were added pursuant to U.S.S.G. § 3B1.1(a) because Mr. Gross was found to be a leader. PSR ¶¶ 69, 71. In total, Mr. Gross's offense level was a level 40. PSR ¶ 73. If the level had been reduced to one to three kilograms as suggested by the Fourth Circuit, Mr. Gross's base offense level today would be 30 pursuant to U.S.S.G. § 2D1.1(c)(3), resulting in a total offense level of 36. With a criminal history category of V instead of the VI required by the guidelines, Mr. Gross's sentencing guidelines for the highest count would be 292-365 months.

(ECF No. 494 at 16.)

same applicable guidelines range of 360 months to life based on the quantity-based total offense level of 38 and the points-based criminal history of V.  *Id.* at 24.

The court finds *United States v. Ferguson* instructive.  55 F.4th 262 (4th Cir. 2022).  There, the defendant filed an 18 U.S.C. § 3582(c)(1)(A) motion, arguing, in part, that his guidelines range was calculated incorrectly.  *Id.* at 265-66.  The district court rejected the defendant's motion for compassionate release on the basis that his non-medical arguments "were in substance a collateral attack on [his] convictions and sentence and noted that the proper vehicle for such a challenge is a 28 U.S.C. § 2255 motion to vacate, set aside, or correct a federal sentence."  *Id.* at 269.  On appeal, the Fourth Circuit agreed and held "that a compassionate release motion cannot be used to challenge the validity of a defendant's conviction or sentence."  *Id.* at 272.  The Fourth Circuit explained:

> When the BOP moves for compassionate release on a criminal defendant's behalf, the federal Sentencing Guidelines -- specifically, the application notes to USSG § 1B1.13 -- limit the district court to considering only the defendant's medical condition, age, and family circumstances and "other reasons" identified by the BOP when determining whether there are "extraordinary and compelling reasons" meriting compassionate release. However, those application notes do not apply to a motion filed by a defendant on his own behalf. *McCoy*, 981 F.3d at 284. Accordingly, when adjudicating such a motion, the district court is "empowered to consider any extraordinary and compelling reason for release that a defendant might raise." *Id.* (alteration and internal quotation marks omitted) (emphasis deleted). Appellant argues that those reasons include arguments that a defendant's sentence should be reduced because his conviction is unlawful.
>
> But Appellant's attempt to collaterally attack his convictions and sentence via a compassionate release motion ignores the established procedures for doing so. Namely, 28 U.S.C. § 2255 is "[t]he exclusive remedy" for challenging a federal conviction or sentence after the conclusion of the period for direct appeal, "unless [§ 2255] is inadequate or ineffective," in which case the defendant may file a 28 U.S.C. § 2241 petition for habeas corpus pursuant to the savings

18

clause at § 2255(e). *United States v. Simpson*, 27 F. App'x 221, 224 (4th Cir. 2001) (Traxler, J., concurring); *Farkas v. Warden, FCI Butner II*, 972 F.3d 548, 550 (4th Cir. 2020) ("Congress requires every federal prisoner who collaterally attacks his conviction to employ the motion mechanism provided in 28 U.S.C. § 2255. There is one exception: If § 2255 appears 'inadequate or ineffective,' then § 2255(e) provides that a federal prisoner may apply for a writ of habeas corpus under § 2241.").

Because § 2255 is the exclusive method of collaterally attacking a federal conviction or sentence, a criminal defendant is foreclosed from the use of another mechanism, such as compassionate release, to sidestep § 2255's requirements. "A habeas petitioner's filing that seeks vindication of such a claim is, if not in substance a 'habeas corpus application,' at least similar enough that failing to subject it to the same requirements would be 'inconsistent with' the statute." *Gonzalez v. Crosby*, 545 U.S. 524, 531, 125 S. Ct. 2641, 162 L.Ed.2d 480 (2005); *see United States v. Winestock*, 340 F.3d 200, 207 (4th Cir. 2003) ("[A] motion directly attacking the prisoner's conviction or sentence will usually amount to a successive application ...."). "In order for these limitations to be effective, courts must not allow prisoners to circumvent them by attaching labels other than 'successive application' to their pleadings." *Winestock*, 340 F.3d at 203 (citing *Calderon v. Thompson*, 523 U.S. 538, 553, 118 S. Ct. 1489, 140 L.Ed.2d 728 (1998)). In other words, no matter how an inmate characterizes his request for relief, the substance of that request controls. If in substance he attacks his conviction and/or sentence, his filing is subject to the rules set forth in § 2255. "Insisting that defendants use the correct process to challenge their convictions and sentences," as the district court did here, "is not empty formalism." *United States v. Sanchez*, 891 F.3d 535, 539 (4th Cir. 2018).

Appellant compares the arguments in his compassionate release motion to those made by the defendants in *United States v. McCoy*, 981 F.3d 271 (4th Cir. 2020), and *United States v. Zullo*, 976 F.3d 228 (2d Cir. 2020), which we cited favorably in *McCoy*, but those comparisons are inapt. The defendants in *McCoy* argued that a change in the sentencing law that occurred after their sentencings (but did not apply retroactively) merited a reduction in their sentences to conform to that change. 981 F.3d at 275. And the defendant in *Zullo* argued that he qualified for a sentence reduction pursuant to § 3582(c)(1)(A) due to "his (apparently extensive) rehabilitation," his "age at the time of the crime[,] and the sentencing court's statements about the injustice of his lengthy sentence." 976

F.3d at 238. By contrast, the arguments Appellant makes in his §
3582(c)(1)(A) motion constitute quintessential collateral attacks on
his convictions and sentence that must be brought via § 2255.
Appellant's arguments are clearly different in kind from the
arguments made by the defendants in *McCoy* and *Zullo* because they
would require the district court, in determining whether
"extraordinary and compelling reasons" for compassionate release
exist, to evaluate whether Appellant's convictions -- and particularly
his conviction on Count Seven -- were valid. "Those convicted in
federal court are required to bring collateral attacks challenging the
validity of their judgment and sentence by filing a motion to vacate
[their] sentence pursuant to 28 U.S.C.[] § 2255." *In re Vial*, 115 F.3d
1192, 1194 (4th Cir. 1997) (en banc).

Appellant suggests that pursuing his arguments in a § 2255 petition
would be futile because, as the Government points out, such a
petition would be both successive and untimely. But these
restrictions are precisely why Appellant cannot use § 3582(c)(1)(A)
to avoid the exclusive remedy that § 2255 provides. To be sure, we
have explained, "the very purpose of § 3582(c)(1)(A) is to provide
a 'safety valve' that allows for sentence reductions when there is not
a specific statute that already affords relief but 'extraordinary and
compelling reasons' nevertheless justify a reduction." *McCoy*, 981
F.3d at 287 (emphasis in original). But in this case, there is such a
statute: § 2255. "[T]he remedy afforded by § 2255 is not rendered
inadequate or effective" -- meaning that a defendant cannot use §
2255(e)'s savings clause to file a § 2241 motion -- "merely because
an individual has been unable to obtain relief under [§ 2255] or
because [he] is procedurally barred from filing a § 2255 motion."
*Vial*, 115 F.3d at 1194 n.5 (internal citations omitted). That same
principle applies in the compassionate release context. The fact that
Appellant may be procedurally barred from raising his arguments in
a § 2255 petition does not qualify as an "extraordinary and
compelling reason[ ]" for compassionate release.

55 F.4th 262, 270-71 (4th Cir. 2022).

In the instant case, Defendant argues that if he were sentenced today, he would be subject

to a guideline sentence of 292-365 months for the highest count.  First, Defendant reaches this

conclusion, in part, by noting that the career offender enhancement in U.S.S.G. § 4B1.1 would not

apply to him today because he was convicted of conspiracy to distribute, which the Fourth Circuit

in *United States v. Norman* held no longer considers a "controlled substance offense" under the guidelines.  The government does not dispute that, were Defendant sentenced today, he would not be determined to be a career offender pursuant to U.S.S.G. § 4B1.1(a), as his instant conviction for 21 U.S.C. § 846 is not a controlled substance offense pursuant to U.S.S.G. § 4B1.2(b).  *See United States v. Norman*, 935 F.3d 232, 239 (4th Cir. 2019) (holding that conspiracy to distribute heroin, unlike possession with intent to distribute heroin, is not a controlled substance offense).  However, on this basis alone, as the Government notes, Defendant's criminal history would result in a criminal history category of V, instead of VI, rendering him within the same guidelines range of 360 to life.  (Gov't Opp., ECF No. 499 at 24.)

Defendant's argument that he would be subject to a guidelines sentence of 292-365 months, however, relies further on his request that this court review the findings made by the original sentencing court.  This argument, like that in *Ferguson*, requires the court to evaluate whether the original sentencing court erred in sentencing Defendant.  Stated differently, Defendant asks this court to revisit the original sentencing court's findings on the basis that, in his view, the court did not consider properly certain factors.  Defendant's arguments are precisely the same arguments that the Fourth Circuit rejected.  *See U.S. v. Gross*, 253 Fed. Appx. 264, 265-66 (4th Cir. 2007) (noting that James Gross Sr. sets forth four arguments on appeal: (1) "the court erred by punishing him for a drug quantity greater than that found by the jury or admitted by him;" (2) the district court erred in "finding that he possessed a firearm during the commission of a drug offense;" (3) the district court erred in the calculation of his advisory guidelines range by determining that he was a career offender and considering his 2001 conviction for distribution of heroin; and (4) that his 600-month sentence was unreasonable).

Because Defendant's compassionate release motion cannot be used to challenge the

21

validity of his sentence, Defendant's sentencing disparity argument is not an extraordinary and compelling reason for compassionate release.  To the extent Defendant maintains that the disparity between his sentence and those of his co-defendants constitutes an extraordinary and compelling circumstance that justifies a sentence reduction, the court disagrees.

The court is mindful that it must "consider the need to avoid unwarranted sentencing disparities among similarly situated defendants," however, sentencing is an individualized assessment.  *United States v. Eccleston*, 573 F. Supp. 3d 1013, 1018 (D. Md. 2021).  In *Eccleston*, in reviewing a motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A), the court found that the sentencing disparity presented an extraordinary and compelling circumstance.  *Id.* at 1016-19.  The *Eccleston* court explained:

> Where there are unwarranted disparities, this Court in particular has in certain cases reduced sentences, especially where less culpable defendants receive a more severe sentence than their more culpable co-defendants. *See, e.g., Sappleton*, PJM-01-284, 2021 WL 598232, at *1, *3 (finding extraordinary and compelling circumstances based on sentencing disparity between conspiracy leader and less culpable co-defendants). In some cases, a disparity has arisen over time, for instance, where a more culpable co-defendant benefits from changes in the sentencing regime and successfully moves to lower his sentence, such that a less culpable co-defendant ends up with a disproportionately long sentence. *See, e.g., United States v. Payton*, PJM-06-cr-341, 2021 WL 927631, at *2 (D. Md. Mar. 11, 2021) (co-defendant's significantly reduced sentence "resulted in a striking disparity where a middling supplier of drugs is punished far more severely than the violent 'ringleader' of a drug trafficking organization that dealt in far greater amounts of drugs" and was an "extraordinary and compelling" reason for relief).
>
> In this case, Eccleston's co-defendants received vastly lower sentences than he did – despite the prosecutor's representations and Judge Williams' concern over sentencing proportionality. The resulting sentencing spread demonstrates that Eccleston's disparate sentence, in context, is unwarranted. *See Payton*, PJM 06-341, 2021 WL 927631, at *2; *Edwards*, PJM-05-cr-179, 2021 WL 1575276, at *3; *United States v. Stockton*, ELH-00-352, 2021 WL 1060347, at

*14 (D. Md. Mar. 17, 2021) (considering sentence reduction of defendant's more culpable brother as a factor that supports reducing defendant's sentence to time served).

Moreover, while Eccleston does not make the argument that he would receive a lower sentence today, data from the 2020 Sentencing Commission Sourcebook show that the mean sentence imposed for drug trafficking was 76 months, 3 substantially lower than the 180 months Eccleston received for his drug charges.

Let it be clear: Eccleston committed serious, albeit non-violent, drug offenses. His role in the drug trafficking operation, however, was relatively minor. The disparity between his 188-month sentence and the sentences of his co-defendants is striking, and particularly concerning given the Government's representation at sentencing before Judge Williams that comparatively higher sentences were expected for other more culpable defendants. *See Sappleton*, PJM-01-284, 2021 WL 598232, at *3 (noting defendant was not a leader in drug trafficking ring yet he had served more time than the leader of the ring). *Compare United States v. Morales-Vega*, PJM 08-0051, 2021 WL 4864450 at *5 (Oct. 19, 2021) (no extraordinary and compelling circumstances due to 50+ month sentencing disparity between petitioner and co-defendants where co-defendants benefited from early acceptance and were minor players in drug conspiracy compared to petitioner, who had a manager role and possessed a weapon). In sum, the sentencing disparity in this case is extraordinary and compelling.

573 F. Supp. 3d at 1018-19.

In the instant case, Defendant maintains that a co-defendant's sentence was reduced from 412 months to 300 months of incarceration after the Fourth Circuit vacated and remanded the case to the district court for resentencing. (Def.'s Mot., ECF No. 494 at 7.) Unlike *Eccleston*, however, Defendant was not among the least culpable defendants. Instead, according to the PSR, Defendant was the leader of the drug conspiracy and responsible for a number of criminal acts. (Def.'s Mot, PSR; ECF No. 494-1 ¶¶ 69, 71.) Defendant acknowledges that his leadership role may justify a longer sentence, however, he maintains that it does not justify a sentence double that of his co-defendant. (ECF No. 494 at 24.) Defendant does not adequately explain why the disparity between

his sentence and those of his co-defendants is unwarranted.  Moreover, to the extent Defendant argues that the original sentencing court's findings were incorrect, this is not the proper avenue to do so.

Accordingly, Defendant fails to show that the sentencing disparity constitutes an extraordinary and compelling reason to reduce his sentence and grant compassionate release.[7]

In the alternative, Defendant argues that retroactive application of Amendment 782 to U.S.S.G. would result in a 2-level reduction in Defendant's offense level.  (Def.'s Mot., ECF No. 494 at 21.)  Originally, the court concluded that Defendant was subject to the base offense level of 34 due to the finding that Defendant's criminal activity "involved at least 3 kilograms, but less than 10 kilograms of heroin."  *Id.* ¶ 68.  With a two-level reduction, Defendant's base offense level would be reduced to 32; with the same enhancements applied at sentencing, the final offense level

---

[7] The court notes that it would come to the same conclusion if it considered the updated Policy Statement.  U.S.S.G. § 1B1.13(b)(6) titled "Unusually Long Sentence" provides:

> If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

U.S.S.G. § 1B1.13(c) provides:

> Except as provided in subsection(b)(6), a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) shall not be considered for purposes of determining whether an extraordinary and compelling reason exists under this policy statement. However, if a defendant otherwise establishes that extraordinary and compelling reasons warrant a sentence reduction under this policy statement, a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) may be considered for purposes of determining the extent of any such reduction.

As discussed, any change in the law does not produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion was filed.  *See* Section III.B.2., *supra.*

would be 38.  With Defendant's criminal history category of VI, the guidelines sentence would be 360 months to life.  As Judge Blake of this court previously ruled, because Amendment 782 does not change his guidelines range, the court declines to reduce Defendant's sentence on this basis. (ECF No. 467.)  Accordingly, for the same reasons, the court declines to reduce Defendant's sentence on the basis of Amendment 782.

**B.**     **Section 3553(a) Factors**

Even if Defendant presented an extraordinary and compelling reason for compassionate release, the court must consider the factors at 18 U.S.C. § 3553(a) to determine whether a sentence modification is warranted.  *See* 18 U.S.C. § 3582(c)(1)(A).  Those factors include: "(1) the nature of the offense and the defendant's characteristics; (2) the need for the sentence to reflect the seriousness of the offense, promote respect for the law, and provide just punishment; (3) the kinds of sentences available and the applicable Guidelines range; (4) any pertinent Commission policy statements; (5) the need to avoid unwarranted sentence disparities; and (6) the need to provide restitution to victims."  *United States v. Johnson*, No. CR ELH-99-352, 2023 WL 7130950, at *21 (D. Md. Oct. 27, 2023).

The court finds that the relevant § 3553(a) sentencing factors do not warrant reducing Defendant's sentence.  As the court indicated at sentencing, "the offense was extremely serious." (Def.'s Mot., Resentencing Tr., Exhibit 3, ECF No. 494-3 at 20:5.)  Defendant was the leader of a large drug conspiracy involved in numerous criminal acts.  (PSR at 6-20.)  Further, Defendant has a lengthy criminal history, including two prior heroin distributions convictions, two prior handgun violation convictions, and one prior conviction of second-degree rape.  *Id.* at 26-27.  Defendant was also on supervised release when he committed the instant offense.  *Id.* at 27.

In addition, Defendant's behavior while in custody is an important indicator as to whether

25

he remains a danger to the community.  *See United States v. Stockton*, No. CR ELH-99-352, 2021 WL 1060347, at *15 (D. Md. May 17, 2021) (noting that "[c]ourts place significant weight on a defendant's post-sentencing conduct because it 'provides the most up-to-date picture of [his] history and characteristics'") (quoting *Pepper v. United States*, 562 U.S. 476, 492 (2011)).  While incarcerated Defendant does not dispute that he has sustained at least thirteen infractions.  (ECF No. 500 at 7.)  In sum, the court agrees, as the sentencing court concluded, that "a sentence of the severest nature is necessary to promote respect for the law and the sentence, although quite severe, is just under the circumstances."  (Resentencing Tr. at 20:6-9.)  Because of Defendant's role in the instant offense, his criminal history, and his subsequent infractions while incarcerated, the factors under section 3553(a) do not weigh in favor of releasing Defendant.

## IV.   **CONCLUSION**

For the reasons set forth herein, by separate order, Defendant James Elmer Gross Sr.'s Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) (ECF No. 494) will be denied.

/S/

_____

Julie R. Rubin
United States District Judge

December 17, 2023